IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ANITA TRACY,                    )
                                )
              Plaintiff,        )
                                )
vs.                             )        Case No. 06-1194-WEB
                                )
MICHAEL J. ASTRUE,[1]           )
Commissioner of                 )
Social Security,                )
                                )
              Defendant.        )
_____ )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner

_____

     [1]On February 12, 2007, Michael J. Astrue was sworn in as the
Commissioner of Social Security.  In accordance with Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J.
Astrue is substituted for Commissioner Jo Anne B. Barnhart as the
defendant.  In accordance with the last sentence of 42 U.S.C. §
405(g), no further action is necessary.

1

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

2

determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not
to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

     The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

     Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

     On January 26, 2006, administrative law judge George M. Bock

4

issued his decision (R. at 18-28).  Plaintiff alleged disability
beginning December 31, 2002 (R. at 18).  For purposes of
disability insurance benefits, the ALJ determined that plaintiff
remained insured through March 31, 2004 (R. at 18-19).  At step
one, the ALJ found that plaintiff had not engaged in substantial
gainful activity since her alleged onset date of December 31,
2002 (R. at 19).  At step two, the ALJ found that plaintiff had
the following severe impairments: history of left knee
chondromalacia; degenerative disc disease of the lumbar spine at
the L4-5 disc level (mild); an adjustment disorder with depressed
mood; degenerative disc disease in the mid to lower dorsal spine
(mild); a personality disorder, not otherwise specified; and
moderate obesity (R. at 19).  At step three, the ALJ found that
plaintiff's impairments did not meet or equal a listed impairment
(R. at 19-20).  After establishing plaintiff's RFC, the ALJ found
at step four that plaintiff could perform past relevant work as a
cannery worker (R. at 26).  At step five, the ALJ further found
that plaintiff could perform other work which exists in
significant numbers in the national economy.  Therefore, the ALJ
concluded that plaintiff was not disabled (R. at 26-28).

**III.  Did the ALJ err in his RFC findings?**

     The ALJ set forth his RFC findings as follows:

          Based on all of the above, the Administrative
          Law Judge finds that claimant's subjective
          allegations of disability are not credible or
          supported by the totality of the evidence, as

5

previously discussed. As previously
referenced, the third party report marked as
Exhibit 5-E has been considered, but is found
to not support a finding that claimant's
symptoms would preclude all types of
competitive employment. Substantial evidence
therefore convinces the undersigned that
claimant, as a result of her overall medical
condition, including her obesity, would be
limited to light work activity as that term
is defined in the regulations. Climbing of
ladders, ropes and scaffolds would be
contraindicated, and claimant should not be
exposed to any vibration, and should not have
to crawl, kneel, or crouch. Balancing,
stooping and climbing of stairs could be
performed on an occasional basis.

As the foregoing residual functional capacity
assessment attests, the undersigned has
accorded weight to claimant's subjective
symptoms and limitations, where supported by
the objective medical evidence of record.
However, it is noted that a claimant need not
be symptom-free in order to be found able to
engage in substantial gainful activity.

(R. at 26).

According to SSR 96-8p the RFC assessment "must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts...and nonmedical
evidence."  The ALJ must explain how any material inconsistencies
or ambiguities in the evidence in the case record were considered
and resolved.  The RFC assessment must always consider and
address medical source opinions.  If the RFC assessment conflicts
with an opinion from a medical source, the ALJ must explain why
the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.
SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1);

Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891
n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118,
1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative
discussion describing how the evidence supports each conclusion,
citing to specific medical facts and nonmedical evidence, the
court will conclude that his RFC conclusions are not supported by
substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx.
781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must
be sufficiently articulated so that it is capable of meaningful
review; the ALJ is charged with carefully considering all of the
relevant evidence and linking his findings to specific evidence.
Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5,
2003).  It is insufficient for the ALJ to only generally discuss
the evidence, but fail to relate that evidence to his
conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49
F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to
comply with SSR 96-8p because he has not linked his RFC
determination with specific evidence in the record, the court
cannot adequately assess whether relevant evidence supports the
ALJ's RFC determination.  Such bare conclusions are beyond
meaningful judicial review.  Brown v. Commissioner of the Social
Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan.
2003).

        The ALJ, in his decision, summarized the evidence, and then

made his RFC findings.  However, the ALJ failed to link or relate
that evidence to his RFC findings.  The record includes a
physical RFC assessment by a state agency medical consultant (R.
at 259-266).  This assessment generally has less severe
limitations than those set forth in the ALJ decision, but this
assessment is not even mentioned in the ALJ's decision.  The ALJ
did discuss RFC assessments prepared by Dr. Basham and an unnamed
physician which included limitations which would preclude
employment (R. at 25, 269-277), but the ALJ concluded that they
should be accorded little weight (R. at 25).  The ALJ also
discussed plaintiff's own assessment of her RFC, but found her
testimony not credible (R. at 20).  Later, the ALJ stated that he
accorded weight to plaintiff's subjective symptoms and
limitations, where supported by the objective medical evidence of
record (R. at 26), but the court cannot ascertain from the ALJ
decision which of plaintiff's subjective symptoms and limitations
are supported by the objective medical evidence of record.[2]

_____

[2]This issue is further complicated by the fact that in the
ALJ's hypothetical question to the vocational expert (VE) which
formed the basis for the ALJ's findings at steps four and five,
the ALJ included three moderate mental limitations (#12-the
ability to interact appropriately with the general public, #14-
the ability to accept instructions and respond appropriately to
criticism from supervisors, and #15-the ability to get along with
coworkers or peers without distracting them or exhibiting
behavioral extremes (R. at 460).  However, these limitations were
not included in the ALJ's decision setting forth plaintiff's RFC
findings.  Furthermore, the court cannot ascertain from the ALJ's
decision the basis for including these limitations, but not
others, or the basis for determining that plaintiff had a

8

In the case of <u>Kency v. Barnhart</u>, Case No. 03-1190-MLB (D.
Kan. Nov. 16, 2004), the court held as follows:

> ...the ALJ simply listed all the evidence
> contained in the record and then set forth
> his conclusion without explaining the
> inconsistencies and ambiguities contained in
> the opinions. He did not connect the dots, so
> to speak, as is required by S.S.R. 96-8p. It
> may well be that upon remand, the ALJ will
> reach the same conclusion. Nevertheless,
> S.S.R. 96-8p is defendant's requirement and
> ALJs presumably are the experts whose
> responsibility it is to know and follow
> defendant's requirements...
>
> Most important, the ALJ must explain how the
> decision was reached. When an ALJ merely
> summarizes the facts, notes that he has
> considered all of the facts, and then
> announces his decision, there is nothing for
> the court to review. The court cannot know
> how the ALJ analyzed the evidence. When the
> evidence is contradictory or ambiguous, as it
> is in most cases, the court cannot know which
> evidence was given what weight, or how the
> ambiguities were resolved. Therefore, to
> determine whether substantial evidence
> supports the conclusion, the court would have
> to reweigh the evidence. Since that option is
> precluded by law, the court can only remand
> to the defendant for a proper explanation of
> how the evidence was weighed and ambiguities
> resolved.

<u>Kency</u>, (D. Kan. Nov. 16, 2004, Doc. 21 at 7, 9); <u>see also</u> <u>Wolfe</u>
<u>v. Barnhart</u>, Case No. 05-1028-JTM (Doc. 25 at 3, July 25,
2006)("It is insufficient for the ALJ to generally discuss the
evidence but fail to relate the evidence to his conclusions").

---

moderate degree of limitation in these three categories.  No
medical evidence in the record supports these findings by the
ALJ.

In <u>Kency</u>, the court found that "it is not at all clear to the court how the RFC, as a whole, was derived." <u>Kency</u>, Doc. 21 at 8). The same is true in the case presently before the court. In light of the fact that the ALJ failed to comply with SSR 96-8p because he did not link his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond judicial review. Therefore, the case shall be remanded in order for the ALJ to comply with SSR 96-8p.

**IV.   Did the ALJ err in his consideration of the RFC medical expert opinions by Dr. Basham and an unnamed physician?**

The opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not

inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

The ALJ discussed the opinions of the physician(s) as follows:

The undersigned has considered all medical

11

expert opinions, including the Residual
Functional Capacity Questionnaire completed
by Dr. Mark Basham, claimant's family
practitioner (Exhibit 15-F), and the medical
source statement completed by Dr. (name
illegible) (Exhibit 16-F). Both of these
physicians assessed some significant
limitations on claimant, all of which would
preclude competitive employment.

An Administrative Law Judge must weigh the
credibility of respective physicians.
Additionally, although the uncontradicted
opinion of a treating physician is entitled
to substantial weight, that tenet is not
without some limitations. In weighing opinion
evidence, the degree to which the opinion is
supported by medical signs and findings is
also considered (20 CFR §§ 404.1527(d)(3) and
416.927(d)(3)). Overall, the undersigned
finds that the opinions of the above-cited
physicians are wholly unsupported by any
physical, neurological, psychological or
mental status examination findings, and they
are inconsistent with claimant's sporadic
medical treatment and her demonstrated level
of functioning. Moreover, their opinions
render opinions on the ultimate issue of
disability and inability to engage in gainful
activity under the Social Security Act, all
of which is reserved to the Commissioner (See
20 CFR § § 404.1527(e) and 416.927(e)).
Accordingly, the above opinions (Exhibits
15-F and 16-F) are being accorded little
weight.

(R. at 25).

The court finds a number of problems with the ALJ's analysis

of these two opinions.  First, the ALJ indicated that the name of

the doctor who prepared the medical source statement regarding

plaintiff's mental limitations was "illegible" (R. at 25).  The

medical source statement has the signature of an "M.D.", and the

12

court does not dispute the ALJ's finding that the signature was illegible (R. at 277).  However, there is no indication in the record that the ALJ made any effort to ascertain the name of the physician who filled out the medical source statement (mental). Thus, the ALJ could not ascertain whether this unnamed physician who filled out the medical source statement was a treating physician, a consultative physician, or a physician who merely reviewed the medical record but never saw the plaintiff.  As the above case law makes clear, absent this information, it is impossible for the ALJ to determine the relative weight that should be accorded to this opinion.

In the recent case of Madrid v. Barnhart, 447 F.3d 788, 790 (10th Cir. 2006), the court set forth the applicable law regarding the ALJ's duty to develop the record regarding medical evidence:

> "It is beyond dispute that the burden to
> prove disability in a social security case is
> on the claimant." Hawkins v. Chater, 113 F.3d
> 1162, 1164 (10th Cir.1997); 20 C.F.R. §
> 404.1512(a) ( "[Y]ou must bring to our
> attention everything that shows that you are
> ⋯ disabled."). Nevertheless, because a
> social security disability hearing is a
> nonadversarial proceeding, the ALJ is
> "responsible in every case 'to ensure that an
> adequate record is developed during the
> disability hearing consistent with the issues
> raised.' " Hawkins, 113 F.3d at 1164 (quoting
> Henrie v. United States Dep't of Health &
> Human Servs., 13 F.3d 359, 360-61 (10th
> Cir.1993)); 20 C.F.R. § 404.944 (requiring
> the ALJ to "look[ ] fully into the issues").

13

In this case, the signature of a medical source who prepared a medical source statement regarding plaintiff's mental limitations was illegible.  The record does not indicate that the ALJ made any effort to ascertain the name of the medical source. Despite the ALJ's failure to make any effort to ascertain the name of the medical source, the ALJ nonetheless made a finding as to the weight to be accorded to the medical opinions contained in the medical source statement.  The court holds that the development of an adequate record requires the ALJ to make a reasonable effort to ascertain the identity of a medical source who prepares a medical source statement which provides opinions regarding a claimant's physical and/or mental limitations.  The ALJ should have ascertained how this medical source statement was included in the record, and either inquired of agency officials or plaintiff's counsel as to the source of this medical source statement.  The ALJ could have also compared the signature on this medical source statement (mental) (R. at 277), with the signature of the physician on the RFC questionnaire (physical) (R. at 273), which contained the typed name of Dr. Basham below the signature, and made a determination if the signatures were made by the same person.  Therefore, on remand, the ALJ shall make a reasonable effort to ascertain the identity of the physician who filled out the medical source statement (mental) so that the ALJ can make a proper determination of the relative

14

weight that should be accorded to that opinion.

Second, the ALJ found that the opinions by Dr. Basham (R. at 269-273) and the unnamed physician (R. at 274-277) "are wholly unsupported by any physical, neurological, psychological or mental status examination findings" (R. at 25). Both forms set forth physical and mental limitations, and the severity of those limitations.   Dr. Basham was identified by the ALJ as plaintiff's family practitioner (R. at 25).

In the case of <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004), the court held that if the ALJ concluded that the treating physician failed to provide sufficient support for his conclusions about plaintiff's limitations, their severity, or the effect of those limitations on a claimant's ability to work, the ALJ should have recontacted the treating physician for clarification of his opinion before rejecting it.   366 F.3d at 1084.   In addition, SSR 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

1996 WL 374183 at *6.

The ALJ found that the opinions by Dr. Basham and the unnamed physician are wholly unsupported by any physical,

neurological, psychological or mental status examination findings.  Dr. Basham was plaintiff's treating physician. Because the ALJ concluded that the Dr. Basham failed to provide any support for his findings about plaintiff's limitations and the severity of those limitations, the ALJ should have contacted Dr. Basham for clarifications of his opinions before rejecting them.  Therefore, on remand, the ALJ shall recontact Dr. Basham for clarification of his opinions before determining the weight to be assigned to them.  Furthermore, if the unnamed physician is identified, and is also a treating physician, the unnamed treating physician must also be recontacted for clarification of his or her opinions before determining the weight to be assigned to them.

Third, the record includes medical findings that in fact may provide support for at least some of the limitations opined by the unnamed physician.  The ALJ noted that Dr. Schwartz, who provided two consultative examinations, gave plaintiff a GAF rating of 70 (R. at 24).[3]  The ALJ also mentioned an intake

---

[3]GAF (global assessment of functioning) scores can be found in the Diagnostic and Statistical Manual of Mental Disorders. Scores of 70, 50 and 30 indicate the following:

61-70: **Some mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning...but generally functioning pretty well, has some meaningful interpersonal relationships** (emphasis in original).

41-50: **Serious symptoms** (e.g., suicidal ideation,

assessment prepared by Glenda Coburn, a licensed clinical social worker specialist (R. at 22, 24).  However, the ALJ failed to mention that Ms. Coburn's intake assessment indicated a GAF score of 30 (R. at 320, Axis V), and a LOF of 50 (R. at 320).  In Lee v. Barnhart, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004), the court stated that "Mr. Lee's present Axis V LOF (level of functioning or global assessment of functioning score) is 48." Thus, LOF may be used synonymously with GAF.  Although it is not clear what Ms. Coburn meant by a GAF of 30 and a LOF of 50, either score, according to the GAF scale (see footnote 3) could indicate an inability to keep a job or an inability to function in a job.  Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work.  A claimant's impairment might lie solely with

---

severe obsessional rituals, frequent shoplifting), **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job) (emphasis in original).

21-30: **Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., stays in bed all day; no job, home, or friends.

Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

the social, rather than the occupational sphere.  A GAF score of
fifty or less, however, does suggest an inability to keep a job.
For this reason, such a GAF score by a medical source should not
have been ignored by the ALJ, Lee v. Barnhart, 117 Fed. Appx. at
678, especially since the ALJ chose to expressly consider higher
GAF scores by a consultative psychologist.  These lower GAF or
LOF scores raise serious questions about the ALJ's assertion that
the severe mental limitations and the effect of those limitations
on plaintiff's ability to work set forth by the unnamed physician
are "wholly unsupported by any...psychological or mental status
examination findings" (R. at 25).  Therefore, on remand, the GAF
or LOF scores set forth by Ms. Coburn must be considered by the
ALJ.

**V.  Did the ALJ err in his credibility determination?**

     The framework for the proper analysis of evidence of pain is
that the Commissioner must consider (1) whether claimant
established a pain-producing impairment by objective medical
evidence; (2) if so, whether there is a "loose nexus" between the
proven impairment and the claimant's subjective allegations of
pain; and (3) if so, whether considering all the evidence, both
objective and subjective, claimant's pain is in fact disabling.
Kepler v. Chater, 68 F.3d 387, 390-91 (10th Cir. 1995); Thompson
v. Sullivan, 987 F.2d 1482, 1488-89 (10th Cir. 1993); Luna v.
Bowen, 834 F.2d 161, 163-65 (10th Cir. 1987).  If an impairment

18

is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence. For example, an impairment likely to produce some back pain may reasonably be expected to produce severe back pain in a particular claimant. Luna, 834 F.2d at 164.  Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone.  Direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. Luna, 834 F.2d at 165.  The absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations. When determining the credibility of pain testimony the ALJ should consider the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.   Thompson, 987 F.2d at 1489.

A reviewing court does not weigh the evidence and may not substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand,

an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

Because this case is being remanded for the reasons set forth above, the ALJ will need to reexamine plaintiff's credibility after giving proper consideration to the medical evidence in the case.  The ALJ shall adhere to the case law set forth above when considering plaintiff's credibility, including allegations of pain.  Plaintiff has alleged numerous errors in the ALJ's credibility analysis.  On remand, the ALJ shall consider the arguments made by plaintiff in her brief when reexamining plaintiff's credibility.  Although the court will not address each argument asserted by plaintiff, the court has found some clear errors in the ALJ's credibility analysis which must be corrected when this case is remanded.  Those errors are set forth below.

In his decision, the ALJ stated the following:

> Although claimant has alleged disabling orthopedic symptoms during the period in question, the record points to very sporadic medical treatment with respect thereto. Specifically, there are no records of any ongoing or consistent physical therapy, pain management, epidural injections, etc., and there are no frequent hospital emergency room visits or inpatient hospitalizations for claimant with respect to any physical complaints during said period.

21

(R. at 22).  However, the ALJ did not cite to any medical source
who recommended the use of, or more extensive use of, these
treatment options.  In the case of <u>Hamlin v. Barnhart</u>, 365 F.3d
1208, 1221 (10th Cir. 2004), the ALJ noted that the claimant did
not require an assistive device for his neck.  The court held
that there is no evidence that any physician recommended such a
device or suggested that one would have provided any pain relief.
The court stated that an ALJ is not free to substitute his own
medical opinion for that of a disability claimant's treating
doctors.  The ALJ is not entitled to *sua sponte* render a medical
judgment without some type of support for his determination.  The
ALJ's duty is to weigh conflicting evidence and make disability
determinations; he is not in a position to render a medical
judgment.  <u>Bolan v. Barnhart</u>, 212 F. Supp.2d 1248, 1262 (D. Kan.
2002).  In the absence of any medical evidence to indicate that
the treatment options (or greater use of the treatment options)
mentioned by the ALJ were recommended by medical treatment
providers or would have provided any relief, the ALJ overstepped
his bounds into the province of medicine.  <u>Miller v. Chater</u>, 99
F.3d 972, 977 (10th Cir. 1996).

The ALJ also pointed to plaintiff's noncompliance with
treatment recommendations by Dr. Siwek and Ms. Coburn (R. at 22).
However, before the ALJ may rely on her failure to pursue
treatment or take medication as support for his determination of

noncredibility, he or she should consider: (1) whether the
treatment at issue would restore claimant's ability to work; (2)
whether the treatment was prescribed; (3) whether the treatment
was refused; and if so, (4) whether the refusal was without
justifiable excuse.  Thompson v. Sullivan, 987 F.2d 1482, 1490
(10th Cir. 1993); Frey v. Bowen, 816 F.2d 508, 517 (10th Cir.
1987).  This analysis applies even when noncompliance with a
physician's recommendation is used only as part of the
credibility determination.  Piatt v. Barnhart, 231 F. Supp.2d
1128, 1129 (D. Kan. Nov. 15, 2002)(Robinson, J.); Silverson v.
Barnhart, Case No. 01-1190-MLB (D. Kan. May 14, 2002)(Belot, J.);
Goodwin v. Barnhart, 195 F. Supp. 2d 1293, 1294-1296 (D. Kan.
(April 15, 2002)(Crow, S.J.).

      The ALJ also stated that the consultative physical
examination by Dr. Jenkins "belies claimant's allegations of
disabling impairments" (R. at 23).  In his decision, the ALJ
noted that Dr. Jenkins indicated that plaintiff reported that she
could sit for 30 minutes and stand for 20 minutes (R. at 23).
However, Dr. Jenkins complete statement regarding plaintiff's
report of her ability to sit and stand is as follows:

            She states that she can sit for 30 minutes.
            However, this depends upon the day and would
            be an average day without much pain. She
            states that she can stand for 20 minutes.
            Again, it depends upon the day and this too
            would be an average if she is not having too
            much pain.

(R. at 207).  When this case is remanded, the ALJ must consider the complete statement that the plaintiff gave Dr. Jenkins regarding her limitations.

**VI.  Did the ALJ err in his analysis of the medical source statement by Celeste Wempe regarding plaintiff's drug and/or alcohol abuse?**

On November 14, 2005, Celeste Wempe signed a medical source statement regarding plaintiff's drug and/or alcohol abuse (R. at 418-421).  The ALJ discussed her report, saying in relevant part:

> Overall, the undersigned finds nothing in Ms. Wempe's report to indicate that claimant, secondary to any mental impairment, absent any drug and/or alcohol abuse, would be prevented from all types of gainful work

(R. at 25).  In her report, Ms. Wempe had listed severe depression as one of plaintiff's impairments (R. at 418).  Subsequently, Ms. Wempe was asked: "If your patient stopped using alcohol completely, would you still consider him or her to be disabled from work activity?"  Ms. Wempe answered: "Yes" (R. at 419).  The court finds that the ALJ has clearly misstated the contents of Ms. Wempe's report.  On remand, the ALJ will be required to give proper consideration to the opinions expressed by Ms. Wempe in her report.

**VII.  Did the ALJ err in his finding that plaintiff's impairments do not meet or equal listed impairment 12.04B or 12.06B?**

In his decision, the ALJ found that the evidence does not

24

establish the requisite degree of severity or frequency of mental functional limitations specified by subparagraphs "B" or "C" of 12.04.  The ALJ further noted that "claimant's representative has not introduced any evidence or advanced any argument supporting a conclusion that any of claimant's impairments meet or equal a listed impairment (R. at 19-20).

Plaintiff correctly points out that the medical source statement (mental) signed by an unidentified physician indicates that plaintiff's impairments met listed impairment 12.04B and 12.06B, noting that plaintiff had marked restrictions of daily living, marked restrictions in maintaining social functioning, frequent deficiencies of concentration, persistence, or pace, and continual past episodes of deterioration or decompensation (R. at 276-277).  Thus, evidence clearly existed in the record indicating that plaintiff's impairments meet these two listed impairments.

However, at the hearing on October 27, 2005, the ALJ asked plaintiff's counsel the following:

> ALJ: Are you -- do you think she meets a listing?
>
> ATTY: No, Your Honor.

(R. at 445).

The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error.  <u>Eateries, Inc. v. J.R. Simplot</u>

Co., 346 F.3d 1225, 1229 (10th Cir. 2003); John Zink Co. v. Zink,
241 F.3d 1256, 1259 (10th Cir. 2001).  This doctrine has been
applied when a party requested that the Departmental Appeals
Board (DAB) of the Department of Health and Human Services, in an
appeal from an ALJ decision, conduct a *de novo* review of the
record, and then claimed before the district court that the DAB
erred in conducting a *de novo* review.  St. Anthony Hospital v.
U.S. Dept. of H.H.S., 309 F.3d 680, 686, 690, 696 (10th Cir.
2002).  This doctrine has been applied by this court when an
attorney stipulated to an ALJ that the claimant's mental
impairment was non-severe at step two, and then argued to this
court that the ALJ erroneously determined that the mental
impairment was non-severe.  Basler v. Barnhart, Case No. 02-1084-
WEB (recommendation and report, April 2, 2003 at 10-12; affirmed
by district court April 15, 2003), and when an attorney, on the
record, amended the onset date to a date later than had been
originally alleged, but then argued that the ALJ erred by failing
to find the earlier onset date which had been originally alleged.
Rivas v. Barnhart, Case No. 05-1266-MLB (recommendation and
report, July 26, 2006 at 6-9; affirmed by district court Aug. 16,
2006).

     In this case, the attorney clearly and unambiguously
asserted to the ALJ that he did not believe that his client met a
listing.  It is therefore clear that plaintiff's counsel induced

26

or invited the ALJ at step two to find that plaintiff did not meet a listed impairment.  Therefore, the court holds that the doctrine of invited error bars the plaintiff from raising this issue on appeal.  However, because this issue is being remanded for other reasons, plaintiff could raise the issue of whether plaintiff's impairments meet or equal a listed impairment with the ALJ.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on July 30, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge

27